The court will proceed to the fifth case, United States v. Leonard. Ms. Gambino. Good morning, Judge Flom, Judge Mannion, and Judge Bauer. You got that right so far. Oh good, I'm glad I'm starting with a bang. We are presented here on behalf of Mr. Leonard because there were insufficient facts contained in the search warrant affidavit to justify the search of Mr. Leonard or his home. And what happened in this particular case boils down to whether the district court was correct or incorrect in finding that two trash poles in which small quantities of marijuana were found were sufficient for establishing probable cause in this case. And what happened was that there was a search warrant affidavit which was based on an allegation from a confidential source that Courtney Watson, who was Mr. Leonard's wife, was dealing drugs from her home. And it was a bare allegation. It didn't say what type of drugs, it didn't say what time period, it didn't say the basis for the informant's knowledge, and it provided absolutely no information about the informant's reliability. The district court acknowledged this and said that she wasn't relying on what the informant said because then she would run into problems with this court's decision in Glover which requires that if the informant's words are used or the informant's contentions are used in an affidavit, there must be some indication of reliability or truthfulness on behalf of the informant. Since none of this was there, the court did not look at or credit the statement of the confidential informant. The other piece of information that was provided, apart from the trash pulls, was that Ms. Watson, they had run a criminal background check on Ms. Watson, and Ms. Watson had in her background an arrest for aggravated battery and a conviction several years old for obstruction of justice, but no connection with any kind of drug dealing or drug offense or anything of that nature. And this court has been pretty clear that there are circumstances in which you can rely on a criminal history to establish probable cause, but there has to be some connection between the prior offenses and the current investigation, and there wasn't here. So the district court did not rely on that either. The district court said, based on this court's decisions in McDuffie, and I believe it was Billion, that she felt that the two trash pulls would be sufficient to establish probable cause. Now the problem with that decision is that the facts at issue in McDuffie and Billion were very different from the facts in Mr. Leonard's case, because in McDuffie, for example, there was reliable information from a confidential source. There was an extensive history of drug dealing and arrests for Mr. McDuffie, and then the marijuana trash pull was cited in support of the other information that was provided, what we didn't have in Mr. Leonard's case. And similarly with Billion, the trash pull was used to reinforce the reliability of the source and the surveillance that law enforcement had done in Mr. Billion's case, including the arrest of someone using Billion's car and Billion's criminal history and his prior conviction of cocaine possession. So in the Billion and McDuffie case, the trash pulls were used to support other information that had been provided, an independent investigation by law enforcement. In Mr. Leonard's case, they didn't do any independent investigation to determine whether this cooperating source was at all reliable or credible. There was no surveillance. There was no controlled by. There was no relevant criminal history. There was nothing at all about Mr. Leonard. What about, what was her name, Courtney? Courtney Watson was Mr. Leonard's wife. Well, what, did she get convicted of anything? The only thing she was convicted of was in 2006, she had a conviction for obstruction of justice. So they had that, they knew that much about her. They knew that much about her, but she had no connection to drugs of any kind. You know those were her stuff in the bags, right? Well, there was, that's what the, That's what somebody said anyway. Somebody said that she was dealing drugs from her house. Now the problem with the marijuana pulls from the bags, first of all, we had no, there was nothing presented at the hearing to say what the quantity of marijuana was, what condition it was found in, or anything else. The court presumed, in agreement with me, that it must have been a very small amount, otherwise they would have reported it. So we don't know what the quantity or the nature or the kind of, we don't even know if it was just simply residue or leavings of some sort that was found in the trash bags. The other problem with it being found in the trash bags in the back of the house was that the house was, the trash was in a public alley. It backed up to a public parking lot. It was very, that marijuana could have gotten there any number of ways. And it's a big leap, and I would suggest too big of an inferential leap to say that somebody is dealing drugs from a house when there are small amounts of marijuana in the trash. Because, first of all, it could be simply a matter of possession or use by someone who was a guest to the house. It could have been possession or use by someone who had never been in the house. And there was no indication of a quantity that was big enough to justify a finding that somebody, or an assertion, just a fair allegation that somebody was dealing some unnamed drugs from the house. So the whole problem is that they got in the house. The whole problem is they used the trash pulls of the marijuana to go into the house like in a SWAT team style. And this is a house where there were seven children living, and they went into the house based on this marijuana alone with their shields and their masks and their guns and everything else. And the problem for allowing this to happen, especially in Illinois where we're a medical marijuana state and we are about to become or may possibly become a recreational state as well, you could, anyone who has a grudge against someone else could say leave an anonymous tip. So-and-so is dealing drugs from their house. Toss the marijuana in the trash cans. People pull the marijuana out of the trash cans and go into the house. There needs to be something more than simply what's found in the trash. And I've not been able to find a single case in this circuit or other circuits where that alone is the basis for a finding of probable cause. Where was Leonard's gun? There were two guns. One belonged to Leonard and one belonged to Ms. Watson. One was on top of kitchen cabinets in a box on top of kitchen cabinets. The other was in a closet in the garage. They say they did a thorough search. They did. And then found the guns. That's correct. That's correct. So it's our position in the first instance that there wasn't sufficient probable cause for them to do this. And then the court made the additional finding that even if you agree that there's not sufficient probable cause, that Leon's good faith exception applies. And our position with respect to Leon is that Leon requires good faith and it has to be reasonable. And in a case like this where law enforcement did not do any independent investigation at all to determine the truth of this cooperating source's information. And all they did was run a background check, which didn't reveal any supporting information to them at all, and used that to go into these trash pulls. It wasn't reasonable what they did. There was no surveillance, no observation, no independent investigation. The quantity wasn't sufficient to justify a conclusion of sale. And it didn't justify the search. And the purpose of the exclusionary rule is to teach law enforcement that they shouldn't act in particular ways. And you don't want law enforcement to do the bare minimum if they're going to be making a decision to go into an individual's home and search it. Thank you, Judge. So, in any event, we would ask this court to find that there were not sufficient facts to justify probable cause and that it wasn't reasonable to find that the officers acted in good faith. Thank you, Ms. Convener. Mr. Phillips. Good morning, Your Honors. Counsel may please the court. Segev Phillips on behalf of the United States. Your Honors, the defense makes several mistakes here that they made previously and that the district court questioned them then. So I just heard that they're saying this is not enough evidence for drug dealing, but that's not relevant. Possession of marijuana for most people in this state is a crime. They point out, again, that, well, this is a trash can that was sitting near the back of an alley and that anyone could have done it. But the affidavit for the search warrant is very clear that this was in a sealed garbage bag with indicia of residency. So unless somebody went into the house, I mean, there's always innocent explanations in any of these cases, right? You say it's not an open container, it's a sealed bag. Is that what you're saying? Yes, Your Honor. If this was somebody who worked at a government lab and happened to handle cocaine, they might have cocaine in their clothes and you might find cocaine in the garbage. But finding cocaine two straight weeks and then applying and getting a search warrant two days later, I think we would all be, we would accept that. Yes, there are innocent explanations to anything. The Supreme Court has made clear that the totality of the circumstances have to be looked at. So the defendant's argument really, in some ways, as I was thinking this through, has two kind of contradictory elements. On the one hand, that there's not enough information about the confidential source for us to rely on it. Okay. On the other hand, they have to assume that the trial court, the magistrate court that looked at it, must have relied on it. Otherwise, they can't get around the lee on good faith. That just can't be. There are reasons why you would not put significant information about a confidential source, who they are, or anything in there. But when you don't put that information in, you assume that that will have very little reliability, if any. This case has, we had two trash pulls. They were accomplished nine days and two days before the search warrant was had. And on each occasion, they resulted in an amount of cannabis that was field tested in a sealed container with indicia of residency. The defense has conceded, essentially, that they cannot now, nor could they at the district court, point to any case that says that is insufficient. The defense now raises the claim about, well, some people in this state have medical marijuana. And that is true. That was not raised, point out, in the opening brief. That was raised in the reply brief. But even if we assume that, at the time this happened, mid-2015, marijuana was, there were some people who could have it, but that's an innocent explanation that is fairly minimal. Because by and large, marijuana by its nature in this state at the time was illegal. In other words, the government believes that there is enough here between the two trash pulls on its own to satisfy that there was probable cause. And even if not, there's no way to get around the good faith requirement. These officers went to a detached and neutral magistrate. They asked for a warrant. They got a warrant. That's prima facie evidence of good faith. And there's been no case, nothing to suggest otherwise. Did the warrant application contain information about the AT&T bill? AT&T bill. There were two, between the two trash pulls, one of them had evidence, it suggested that there was to our neighbors at, I don't know if it was a bill, but it was to our neighbors at. But it gave a description of 1425 5th Avenue. Yes. So that was from the informant. So that was the same address. Did the informant say that's the address at which there was dealing going on? Yes. It said in the house of, the way the affidavit is written, the house of Courtney Watson, and then it described the house. So it's a little bit. Was that house 1425? Yes. 5th Avenue. Yeah. So the confidential source did identify that that was Ms. Watson's house. But the defense tries to make much of this that, well, Mr. Leonard wasn't named. And that's, the question is, does this premises have, is there evidence of crimes? There are probable cause to believe that there's evidence of crime in this one. And the two trash pulls within Dishoved Residency satisfy that. If the court has no further questions, the government will rest on its brief. All right. Thank you, Ms. Gambino. Ms. Gambino, should we put any reliance on the coincidence of the informant saying it's Courtney's house, and it turns out it's the same as the address on the AT&T bill that's in the trash? That still doesn't get you to drug dealing, Judge. Basically, that certainly was her house. But what the informant said, that she was dealing illegal narcotics, and there was nothing to tie Ms. Watson to any illegal narcotics dealing. And the marijuana found in the trash cans is not enough to support an inference of dealing because you don't know what the quantity was and you don't know how it got into the trash can in the first place. And so you have to make too many inferential leaps between Ms. Watson and the marijuana in the trash can in order to make it sufficient. And the final thing, Judge, is that the government wants to have its cake and eat it. You can rely on the totality of the circumstances with respect to this, including the statement from the informant, but you don't want to look at Glover, which requires that if you're going to rely on the informant in any way, you have to show that there's some reliability to it, and that wasn't done. So we'd ask that the decision of the district court be reversed. All right. Thank you, Ms. Gambino. Thank you, Mr. Phillips. Case is taken under advisement, and the court will stand in recess. Thank you.